IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD STREET ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | Civil Action No. 06-1705 |
| ) | |
| STEEL VALLEY OIC, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Chief District Judge.

## MEMORANDUM OPINION AND ORDER OF COURT

### Synopsis

Plaintiff Richard Street ("Street") worked for Defendant Steel Valley OIC ("Steel Valley") for a number of years in a variety of capacities. He contends that during his employment he was subject to a number of unlawful working conditions. He filed this suit in order to seek redress for those perceived unlawful working conditions.

I previously granted summary judgment in favor of Steel Valley with respect to Street's claims arising under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. See Docket No. [33]. Further, Street concedes that his claims arising under the Pennsylvania Human Relations Act are time barred. See Docket No. [48], p. 1, 3. Consequently, the only "unlawful working conditions" remaining at issue in this case arise under 42 U.S.C. § 1981.

Street's § 1981 claim is comprised of three components - hostile work

environment, disparate treatment and retaliation. Steel Valley contends that all aspects of the § 1981 claim are fatally flawed and has filed a Motion for Summary Judgment in this regard. See Docket No. [36]. Although Street did file an Answer to Defendant's Memorandum of Law in Support of Motion for Summary Judgment and a Counter Statement of Material Facts, neither contained any citation to record evidence.[1] Indeed the only evidence Street submitted in opposition to the pending Motion consists of a single unidentified page and his letter of termination.

After careful consideration, and for the reasons set forth below, the Motion for Summary Judgment is granted.

## Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery, and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] Street's failure in this regard constitutes a direct violation of Local Rule 56.1.

In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

Analysis

I. Hostile Work Environment

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the victim's employment and creates an abusive working environment." National R.R. Corp. v. Morgan, 536 U.S. 101, 116, 122 S. Ct. 2061 (2002).  Street contends that he was subjected to a hostile work environment by his supervisor LuEthel Nesbit and that the harassment was motivated by Street's race.  According to Street, the harassment manifested itself in comments Nesbit

made to him over the years.[2]

To prevail on a hostile work environment claim,[3] Street must demonstrate that:

(1) he suffered intentional discrimination because of his membership in a protected class;

(2) the discrimination was severe or pervasive;

(3) the discrimination detrimentally affected Street;

(4) the discrimination would have detrimentally affected a reasonable person of the same protected class in Street's position; and

(5) the existence of respondeat superior liability.

See Verdin, 124 Fed. Appx. at 95-96 (citations omitted). Steel Valley argues, in part, that the incidents Street describes do not meet the "severe or pervasive" requirements of a *prima facie* case. Factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," inform me regarding the

---

[2] Street offers in support of this claim, Nesbit's comments that she wanted to "spend time with him" and Steel Valley's act of having hired a Board Member's son in violation of policy. See Docket No. [48], p. 12-13. These allegations do not, however, suggest race discrimination. They may suggest sexual harassment (a claim which has already been disposed of) and some sort of ethics violation perhaps, but they are not germane to claims based upon race. The only allegations Street makes related to race are those comments attributed to Nesbit which are described above.

[3] A Section 1981 hostile work environment claim is evaluated according to the same standards as is a Title VII hostile work environment claim. See Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005).

severity and / or pervasiveness of the discrimination. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) and Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).

In light of these considerations, Street's claim falls far short of establishing either "severe" or "pervasive" discrimination. Indeed, he recounts only two comments Nesbit made during his employment:[4]

> (1) At her daughter's graduation party (at an off work site), Nesbit told another guest who inquired about Street's whereabouts, "you know how our people are."[5] See Docket No. [39-2], p. 41. This occurred sometime after 2000.

> (2) On another occasion, Nesbit and Street were designated to attend a conference in Williamsport and she told Street that they should "be on our best behavior, because you know how our people do." Id., p. 42.

Though Street was unable to recall other specifics, he estimated that Nesbit made approximately three other similar statements during his employment under his supervision. Id., p. 44. Street believes Nesbit became Executive Director, and thus his supervisor, in the mid-1990s. See Docket No. [45], ¶ 13.

While these comments are certainly insensitive, they are not "severe" enough to have contaminated the workplace environment. Additionally, a total of five comments (only two of which Street could even recall with any specificity and only one of which was directed at Street or made in his presence) over a ten

---

[4] Again, I take the time to note that Street did not himself proffer any evidence concerning these statements. Instead, I found evidentiary support for these statements in the materials Steel Valley submitted.

[5] Both Street and Nesbit are African American.

year period can hardly be described as "pervasive." Rather, these comments were infrequent and isolated in nature. See Abraham v. Abington Friends School, 215 Fed. Appx. 83, 85 (3d Cir. 2006) (finding five instances of name calling over a two year period did not support a hostile work environment claim under the ADEA). In short, Street has not satisfied his burden of establishing that the comments rose to the requisite level of harassment that a jury would find actionable. Consequently, summary judgment is granted in favor of Steel Valley on the hostile work environment claim.

II. Discrimination

Street also asserts a claim under § 1981 for discrimination in the form of disparate treatment. Though it is difficult to assess the precise contours of Street's disparate treatment claim,[6] it appears to be based upon three components: disparate pay; disparate work opportunities and disparate discharge. See First Amended Complaint, ¶ 19(a), (e) and (h).[7] Steel Valley urges that Street cannot recover based upon any of these theories. For the reasons set forth below, I agree.

The disparate pay and disparate work opportunities claims are untimely, Street's disparate pay claim is based upon a job he was given in the late 1990s. See First Amended Complaint, ¶ 19(a). His disparate work opportunity claim

---

[6] The parties use the general phrase "discrimination" in the briefs, but Street describes the claim in the First Amended Complaint as one of "disparate treatment." See Docket No. [3], paragraph 19.

[7] Though Street references Nesbit's inappropriate comments in his discussion of disparate treatment, these comments are more appropriately addressed in the context of the hostile work environment claim.

appears to relate to a job opening with "CCI" - a Duquesne Light program. Id., ¶ 19(e). From the limited testimony submitted by Steel Valley, it appears that Tony Saccamingo was awarded this job sometime prior to 2001. See Docket No. [39-3], p. 108, 111, 144-145. Accordingly, both claims exceed the four year statute of limitations that the parties contend is applicable here. See Docket No. [37], p. 10 and Docket No. [48], p. 12. Steel Valley is entitled to summary judgment on these claims.[8]

Further, even were those claims revived under the continuing violations doctrine, they would fail, as does the disparate discharge claim, because the record is devoid of any evidence that raises a reasonable inference of disparate treatment based upon the comparators identified by Street. Specifically, with respect to disparate pay, Street states in his brief that "the prior Caucasian Warehouse Manager was paid a higher rate of pay than Plaintiff." See Docket No. [48], p. 10. With respect to the disparate opportunities claim, Street alleges that "a Caucasian employee was selected for an opportunity with CCI for Duquesne Light." Id. As to the disparate discharge claim, Street states that "Caucasian individuals were not fired for an alleged DUI [sic] in the early 1980s... ." Id., p. 11-

---

[8] Street does contend, without briefing the issue in any meaningful way, that the claims would survive under the continuing violations doctrine. Yet to "show a continuing violation in the employment discrimination context, 'the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standard operating procedure.'" Evans v. Port Authority Trans-Hudson Corp., Civ. No. 4-4062, 2006 WL 408391 at * 3 (3d Cir. Feb. 23, 2006), quoting, Jewett v. Inte'l. Tel. Corp., 653 F.2d 89, 91-92 (3d Cir. 1981). Street has not met this burden. The evidence shows nothing more than a string of isolated and discrete acts.

12. Yet Street has provided absolutely no evidence supporting these assertions. Indeed, I have nothing regarding these individuals' job duties, salaries, qualifications, educational backgrounds, or the particular circumstances regarding the hire with CCI or the alleged DUI. See Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152, 160-61 (3d Cir. 2006) (affirming the district court's grant of summary judgment on a discriminatory pay claim under § 1981 where plaintiff presented no evidence of the type of work performed by other "Grade 16 mangers").

Street bears the burden of proffering evidence from which a fact finder could conclude that the proposed comparable employees are "similarly situated in all material respects." Sherrod v. Booker T. Washington Center, Civ. No. 4-208, 2006 WL 270737 at * 8 (W.D. Pa. Sept. 19, 2006), citing, Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996). Street has not discharged this burden. Accordingly, summary judgment is granted in favor of Steel Valley on Street's disparate treatment claims.

III. Retaliation

Finally, Street claims that Steel Valley retaliated against him for his having complained of unlawful discrimination. To establish a *prima facie* case of retaliation, Street must demonstrate that:

(1) he engaged in protected activity;

(2) he suffered an adverse employment action; and

(3) that a causal connection exists between the protected activity and the adverse employment action.

See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)(citations omitted).  Though Steel Valley challenges Street's ability to prove each of the elements, I find that Street's termination of employment does constitute an adverse employment action.  Consequently, I will limit my analysis to the evidence regarding protected activity and causal connection.

 (A) Protected Activity

 Street identifies his "protected activity" in a very vague manner.  His "Answer" references "unequal pay and opportunity provided to Caucasian employees." See Docket No. [48], p. 15.  Yet Street does not himself provide any documentary evidence in support of any suggestion that he actually complained of unequal pay or opportunities.  His failure in this regard in and of itself would support the entry of summary judgment in Steel Valley's favor.

 Nevertheless, I reviewed the deposition excerpts that Steel Valley submitted in conjunction with its Motion.  In those excerpts Street testified that he asked Nesbit, sometime between 1997 and 1999, why he made approximately $1,000 less than Dave Cameron (a Caucasian employee), at the same position. See Docket No. [39-2], p. 34-35 and [39-3], p. 1.[9]  Yet he denies characterizing this question as a "complaint." See Docket No. [39-2], p. 86.  Further, there is no indication that Street made any comment to Nesbit that he believed that the pay differential was based upon racial discrimination.  A failure to reference racial

---

[9] The exchange in the deposition suggests that Street merely questioned Nesbit why he made $1,000 less than the individual who previously held the same position.  There is no indication that there was ever a discussion about the fact that Street is African American and that the employee who previously held the position is Caucasian.

discrimination in connection with a complaint deprives that complaint as qualifying as "protected activity." See Mahone v. U. of Pittsburgh Medical Center, Civ. No. 6-628, 2007 WL 2461801at * 10 (W.D. Pa. Aug. 23, 2007) (finding that letters in which plaintiff complained of being characterized as a Clinical Nurse II, but which were devoid of reference to racial discrimination, did not constitute protected activity), citing, Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3d Cir. 2006) (stating that to establish protected activity, the plaintiff must identify the employer and the unlawful practice) and Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995) (finding that a letter to a human resources department did not constitute protected activity where the plaintiff did not specifically mention age discrimination, but only complained that the job had been given to a less qualified individual. The record is similarly devoid of any evidence that Street ever complained to Nesbit or any other Steel Valley official about work opportunities or referenced racial discrimination in connection with such complaints.

Street's Brief also vaguely references, again without citation to the record, "mismanagement of the operations" and Nesbit's "failure to punch the time clock." He considers these to have been protected activities. Yet these complaints were apparently made to the OIC of America rather than to Steel Valley. As previously established in this case, these are different entities, and Street has not established how a complaint to one entity would give rise to a retaliation claim against a separate entity. Certainly there is no evidence in the record that OIC of America communicated Street's complaints to Steel Valley.

Further, these complaints would not constitute "protected activity" in any event because, as with the references to unequal pay and opportunities, there is no evidence in the record to suggest that Street made any mention in connection with these complaints of racial discrimination.

The only complaint Street made which arguably constituted protected activity within the parameters of § 1981 involves the single complaint he made to Nesbit in response to one of the comments she made referenced above. See Docket No. [39-2], p. 43-44, 48. Street did not detail the nature of the complaint made, nor when the complaint was voiced. Nevertheless, because Nesbit's comment, as recounted by Street, can be interpreted as referring to a protected class of people, and because Street reports having objected to such a comment, I will accept for purposes of summary judgment that this single objection constituted protected activity.

(B) Causal Connection

Street must establish a causal connection between his having objected to Nesbit's comment and his ultimate firing. I may consider a "broad array of evidence" in assessing whether Street has established a sufficient causal link to survive a motion for summary judgment. See LeBoon v. Lancaster Jewish Community Center Association, 503 F.3d 217, 232 (3d Cir. 2007), citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). For instance, an increase in hostility following protected activity, or temporal proximity between the protected activity and the adverse action, and / or the advancement of inconsistent reasons for the adverse action are all probative evidence of the

existence of a causal connection. See Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001).

Street has not offered *any* evidence of an increase in hostility, of temporal proximity or of the advancement of inconsistent reasons for his termination. Indeed, Street's argument with respect to causal connection appears to be that "[t]he necessary causal connection could be inferred." See Docket No. [48], p. 14. I disagree. As plaintiff, Street bears the burden of establishing a *prima facie* case. He has failed to do so. Accordingly, Steel Valley is entitled to summary judgment on the retaliation claim asserted under § 1981.

## Conclusion

In short, Street has failed to establish a *prima facie* case under § 1981 of hostile work environment, disparate treatment or retaliation. He simply failed to submit any evidence in support of his claim, relying instead on rhetoric and hyperbole. In light of these shortcomings, Steel Valley is entitled to the entry of summary judgment in its favor.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD STREET ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> STEEL VALLEY OIC, ) <br> ) <br> Defendant. ) | Civil Action No. 06-1705 |

AMBROSE, Chief District Judge.

ORDER OF COURT

AND NOW, this 7th day of March, 2008, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Docket No. [36]) is GRANTED. Summary judgment is entered in favor of the Defendant on all remaining claims.

BY THE COURT:


/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge